**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

KEITH L.,[1]      )
          )
   **Plaintiff,**   )
          )  **No. 25 C 4025**
  **v.**       )
          )  **Magistrate Judge**
**FRANK BISIGNANO,**   )  **Maria Valdez**
**Commissioner of Social Security,** )
          )
   **Defendant.**   )
          )

## <u>MEMORANDUM OPINION AND ORDER</u>

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Keith L.'s claims for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's request to reverse the Commissioner's decision [Doc. No. 14] is denied.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

## BACKGROUND

### I.     PROCEDURAL HISTORY

On June 10, 2022, Plaintiff filed an application for DIB, alleging disability since September 23, 2021. The claim was denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held telephonically on February 22, 202. Plaintiff appeared and testified at the hearing and was represented by counsel. Vocational expert ("VE") Diamond Warren also testified.

On March 18, 2024, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II.    ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of September 23, 2021. At step two, the ALJ concluded that Plaintiff had the following severe impairments: status/post gunshot wound with left femur fracture and osteoarthritis; degenerative disc disease. The ALJ concluded at step three that his impairments, alone or in

combination, do not meet or medically equal a Listing. Before step four, the ALJ determined that Plaintiff retained the Residual Functional Capacity ("RFC") to perform light work with the following additional limitations: can frequently climb ramps and stairs, but no climbing ladders, ropes or scaffolds; can frequently balance and stoop; can occasionally kneel, crouch and crawl; can have occasional exposure to wetness, vibration and hazards; needs to shift positions for one to two minutes every 30 minutes, from sit to stand, or back, while remaining on task.

At step four, the ALJ concluded that Plaintiff would be unable to perform any past relevant work. At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## **DISCUSSION**

### I.    **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if they have an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a Plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the Plaintiff presently unemployed? (2) Does the Plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of

specific impairments enumerated in the regulations? (4) Is the Plaintiff unable to perform her former occupation? and (5) Is the Plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the Plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The Plaintiff bears the burden of proof at steps 1-4. *Id.* Once the Plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the Plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.      JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus "limited to ensuring that substantial evidence supported the ALJ's decision and that the ALJ applied the correct legal standards." *Morales v. O'Malley*, 103 F.4th 469, 472 (7th Cir. 2024); *see Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of

4

'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *see Warnell v. O'Malley*, 97 F.4th 1050, 1051 (7th Cir. 2024) ("[S]ubstantial evidence [is] a standard that the Supreme Court has emphasized is light.").

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether Plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841. At all times, the burden of demonstrating disability remains on the claimant. *See Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). "It is not enough to nitpick the ALJ's order. To warrant reversal, [the claimant] must show that the ALJ's determination was not supported by substantial evidence." *Morales*, 103 F.4th at 471 (explaining further that claimants "must demonstrate with references to evidence why the ALJ's determinations lack substantial support in the administrative record").

ALJs therefore "are subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence . . . or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053.

5

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). ALJs must "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Warnell*, 97 F.4th at 1054; *see Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). Furthermore, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion" but must consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III.   ANALYSIS

Plaintiff argues that The ALJ (1) erred in evaluating Plaintiff's subjective symptoms and (2) erred in evaluating the opinion evidence.

### A.   The ALJ Did Not Err in Evaluating Plaintiff's Subjective Symptoms

In advancing his first argument, Plaintiff claims that the ALJ applied the wrong standard because he wrote that Plaintiff's statements concerning the intensity, persistence, and limiting effects of symptoms were "not entirely consistent" with the medical evidence and other evidence of record. Plaintiff contends that the relevant inquiry is merely whether the claimant's statements are

"reasonably consistent" with the evidence. But the Seventh Circuit has admonished that using the phrase "not entirely consistent" does not demonstrate that the wrong standard was applied. *Harris v. Saul*, 835 F. App'x 881, 886, 2020 (7th Cir. 2020). Rather, the Seventh Circuit has characterized the use of the phrase "not entirely consistent" in this particular context as "harmless boilerplate." *Id.* Indeed, the use of the phrase is problematic only "if the ALJ does not identify and explain the relevant inconsistencies or other reasons for discounting the subjective complaints." *Hostetter v. Saul*, 841 F. App'x 983, 986-87 (7th Cir. 2020). Here, however, the ALJ did explain the relevant inconsistencies and other reasons for discounting Plaintiff's subjective complaints. The ALJ noted that, *inter alia*, the benefit noted in the record from conservative treatment undercut Plaintiff's assertions.

Relating to this observation by the ALJ, Plaintiff contends that the ALJ's characterization of Plaintiff's treatment as "conservative" is wrong. Plaintiff explains that he suffered a gunshot wound, underwent a subtrochanteric femur fracture open reduction internal fixation, participated in physical therapy, was prescribed Gabapentin and a cane, and that a CT of the lumbar spine showed disc bulges and moderate spinal stenosis. But the ALJ observed that the therapy records reflected improved ambulation; that the discharge records showed plaintiff had met his goals; that plaintiff had no increased pain after walking one block, no increased pain with stairs, and that his knee gave out once per week or less; that Plaintiff reported relief from his left hip pain with gabapentin and tramadol; and that the treatment record showed plaintiff's back pain improved with lidocaine patches.

Regardless of how the ALJ characterized Plaintiff's treatment, the ALJ reasonably found that the benefit from the treatment did not warrant limiting Plaintiff beyond the limitations the ALJ imposed.

Plaintiff also complains that the ALJ should not have cited conservative treatment to discount Plaintiff's claims about his symptoms because the ALJ did not elicit from Plaintiff an explanation as to why he did not pursue more aggressive care and then account for it in the decision. But the ALJ did ask Plaintiff why he did not seek or obtain more physical therapy. Plaintiff responded that his provider told him that therapy would not help.

To the extent Plaintiff asserts that the ALJ incorrectly weighed the evidence because she found that Plaintiff had improvement in functioning and recovery, presented to the consultative examination without the use of a cane, had 5/5 strength, and could do lunges in physical therapy, Plaintiff asks this Court to reweigh the evidence. This Court may not do so. *Skinner*, 478 F.3d at 841.

### B. The ALJ Did Not Err in Evaluating the Opinion Evidence

In advancing his second argument, Plaintiff explains that the ALJ found the state agency consultants' opinions persuasive but points out his cane use and balancing issues. It is not entirely clear what Plaintiff is arguing in pointing out his cane use and balancing issues, but to the extent he contends the ALJ did not consider this evidence, that is not correct, as the ALJ notes it repeatedly throughout the decision. To the extent Plaintiff is saying the ALJ did not give his cane use

enough weight, as noted above, this Court may not substitute its judgment for the ALJ's with respect to weighing the evidence. *See id.*

Plaintiff also notes that his consultative examination "was not normal" in that it noted "issues with balancing, standing and walking" and that Plaintiff "could not squat, could not stand on the left foot alone, had positive straight leg raise." Plaintiff contends that the ALJ declined to incorporate limitations on walking, standing, or squatting without explaining why given the notes from the consultative examination. It is true that the ALJ did not explicitly reject these findings in the context of discussing the consultative examination, but the ALJ did cite various examination findings throughout the decision that undermined these findings. *See Deloney v. Saul*, 840 F. App'x 1, 5 (7th Cir. 2020) (ALJ's analysis of a medical opinion can find support "elsewhere in his decision.") Thus, the ALJ satisfied her obligation to minimally articulate her reason for weighing the consultative examination as she did.

Plaintiff also highlights the opinion of a nurse practitioner, claiming that the ALJ did not offer "good reasons" for finding this opinion unpersuasive. The ALJ cited numerous records in her explanation for why she rejected this opinion. Whether the reasons were "good" is not within the scope of the Court's role. Rather, the Court only looks to whether the ALJ relied on substantial evidence. *Morales*, 103 F.4th at 472 (7th Cir. 2024). She did so here.

Finally, Plaintiff complains that the ALJ provided an additional limitation that Plaintiff needs to shift positions every 30 minutes, the origin of which Plaintiff

9

cannot trace. It seems that the ALJ derived this limitation from Plaintiff's report to the consultative examiner that he could only sit for 30 minutes at a time and from his testimony at the hearing that he could only sit for 20 to 30 minutes at a time. Indeed, the ALJ says in the decision that she based this limitation off of "Plaintiff's "subjective complaints of pain with prolonged positioning." Therefore, the ALJ relied on substantial evidence in arriving at this limitation.

## CONCLUSION

For the foregoing reasons, Plaintiff's request to reverse the Commissioner's decision [Doc. No. 14] is denied and the Commissioner's decision is affirmed.

SO ORDERED.                                              ENTERED:

DATE:     March 25, 2026                        _____
                                                            HON. MARIA VALDEZ
                                                            United States Magistrate Judge

10